Neczypor *v.* Jacobs, Appellant.

Argued March 23, 1960. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-
GOMERY, JJ.

reargument
refused April 29, 1960.

*Irving R. Shull*, with him *Alfred I. Ginsburg*, and *Bernard L. Lemisch*, for appellant.

*Miles Warner*, for appellee.

OPINION BY ERVIN, J., April 13, 1960:

Plaintiff, Stephen S. Neczypor, brought this suit in trespass to recover damages for an alleged malicious prosecution. At the instance of Joseph Jacobs, a detective on the Philadelphia Police Force, who at the times hereinafter described was dressed in plain clothes, plaintiff was arrested and indicted on a charge of operating an automobile while under the influence of intoxicating liquor. Plaintiff was acquitted of the criminal charge. The jury in the present action returned a verdict in his favor in the sum of $4,000.00. After denial of defendant's motions for judgment n.o.v. and for new trial, judgment was entered on the verdict. Defendant appealed.

This appeal is the second taken by the defendant from a judgment against him in this action. In the prior appeal, *Neczypor v. Jacobs*, 188 Pa. Superior Ct. 25, 146 A. 2d 83, we reversed for trial error and granted a new trial. In that opinion we suggested to the court below use of the trial procedure advised by the Supreme Court in *Simpson v. Montgomery Ward & Co.*, 354 Pa. 87, 96-99, 46 A. 2d 674. Pursuant to that suggestion the court below submitted 11 interrogatories to the jury for special findings of fact.[1] The questions were

---

[1] "SPECIAL FINDINGS OF FACT

"1. Was the plaintiff arrested by the defendant on June 4, 1955, and thereafter charged by the defendant with the offense of operating a motor vehicle while under the influence of intoxicating liquor?

"ANSWER 'YES'

answered adversely to the defendant. The court thereupon found that plaintiff's arrest had taken place with-

"2. Was the plaintiff held for Court and thereafter, in February of 1956, acquitted by the jury of the offense of operating a motor vehicle while under the influence of intoxicating liquor?

"Answer 'Yes'

"3. Did the defendant cause the arrest and prosecution of the plaintiff for a malicious purpose, that is,—do you believe that the primary purpose of the defendant was Not to bring an offender to justice?

"Answer 'Yes'

"(If Your Answers To Questions 1, 2 and 3 Are 'Yes'
Then:

Proceed To Answer The Following Remaining
Questions,—that is, Questions: 4, 5, 6, 7,
8, 9, 10 and 11).

"4. Did the defendant, Joseph Jacobs, honestly and reasonably believe that he saw the plaintiff, Stephen S. Neczypor, drive his vehicle in a zig-zag course near the intersection of 5th Street and Girard Avenue?

"Answer 'No'

"5. At the time when the plaintiff and the defendant first stopped their vehicles and conversed, did the defendant, Joseph Jacobs, honestly and reasonably believe that the plaintiff, Stephen S. Neczypor, was acting in a belligerent manner?

"Answer 'Yes'

"6. At the time when the plaintiff and the defendant first stopped their vehicles and conversed, did the defendant, Joseph Jacobs, honestly and reasonably believe that he smelled liquor on the breath of the plaintiff, Stephen S. Neczypor?

"Answer 'No'

"7. At the time when the plaintiff and the defendant were resuming their course northward on 5th Street toward Lehigh Avenue,—that is, after the plaintiff and the defendant had stopped to converse for the first time,—did the defendant, Joseph Jacobs, honestly and reasonably believe that he saw the plaintiff, Stephen S. Neczypor, drive his vehicle in a zig-zag course?

"Answer 'No'

"8. At the time when the plaintiff and the defendant stopped their vehicles at 5th Street and Lehigh Avenue, did the defendant,

out probable cause and entered judgment for the amount assessed by the jury.

The principal complaints of the appellant are: (1) that the interrogatories were inadequate as to form and content, and (2) that the court improperly delegated to the jury the finding as to probable cause.

A reading of the interrogatories is sufficient to defeat the first argument. The interrogatories expressly covered the issues of plaintiff's arrest and prosecution by defendant, his subsequent acquittal, whether the arrest and prosecution were maliciously motivated, whether defendant honestly and reasonably believed plaintiff to have operated his automobile erratically, to have acted belligerently, to have had an alcoholic breath, whether plaintiff, in fact, operated an automobile under the influence of intoxicating liquor and whether defendant honestly and reasonably believed that he was. The last interrogatory related to damages. The purpose of special interrogatories addressed to the jury in a cause of action for false arrest and malicious prosecution is to elicit the "basic facts" which are in issue: *Simpson v. Montgomery Ward & Co.*, supra, at

---

Joseph Jacobs, honestly and reasonably believe that he smelled liquor on the breath of the plaintiff, Stephen S. Neczypor?

"ANSWER 'No'

"9. Was the plaintiff, Stephen S. Neczypor, operating a motor vehicle while under the influence of intoxicating liquor, at the time of the occurrences in question?

"ANSWER 'No'

"10. At the time and prior to the time of the arrest,—that is, while plaintiff was observed by the defendant to be operating his automobile on 5th Street between Girard and Lehigh Avenues,— did the defendant honestly and reasonably believe that plaintiff was operating his automobile while under the influence of intoxicating liquor?

"ANSWER 'No'

"11. In what amount do you assess damages?

"$4,000.00"

page 100. In the *Simpson* case our Supreme Court, at pages 100, 101, said: "It would make for a just verdict in this case if the trial judge would submit to the jury questions for special findings as to certain basic facts. See Restatement, Torts, Sec. 673, comment d. Among those facts these should be included: (1) Did Mrs. Donna Yarger McCall honestly and reasonably believe that she 'saw the younger woman' (Alberta Simpson) 'Put a pair off the counter' (of defendant's shoes) 'into a shopping bag she had between her and the counter'? (2) Did Mrs. McCall report such an occurrence to the manager of the shoe department of the defendant's store, J. J. Burns? (3) Did Homer F. Bechtel, Assistant Manager of the defendant's store, on July 13, 1944, honestly and reasonably believe that he saw the plaintiff 'pick up a pair of shoes' in defendant's store, 'open a carrying bag and drop them in' and then 'just in a split second leave the department' and go to the front of the store? (4) When H. F. Bechtel, defendant's Assistant Manager, made the complaint against the plaintiff to C. F. Fend, Chief of Police of Butler, was he acting on an honest and reasonable belief that he saw the plaintiff unlawfully take into possession the shoes which were the property of Montgomery Ward and Company?" A comparison of the interrogatories here challenged for alleged inadequacy and incompleteness shows an exact parallel with those which the Supreme Court deemed proper in the *Simpson* case and we feel that they were entirely adequate.

The trial judge did not delegate to the jury the issue of probable cause. In his charge to the jury he said: "With reference to the element of probable cause, I charge you that the question of want of probable cause is exclusively for the Court to determine, because probable cause is a question of law. Upon the issue of probable cause, you, the jury, I repeat, have only the function of finding the circumstances under which the

defendant in this case acted, prior to and at the time of the arrest of the plaintiff.

"You will have a right to determine the circumstances that led up to the arrest of the plaintiff. You will determine those circumstances, but what is probable cause is for the Court to determine.

"However, members of the jury, in order for the Court to determine the existence or nonexistence of probable cause, you must decide certain questions as to certain basic facts which are at issue in this case. I therefore shall submit to you a list of questions which you will answer when you retire to consider the case. These questions when answered by you are called special findings of fact. I shall now read them to you. . . ." After the jury returned its findings on the interrogatories, the court said: "Upon the basis of the findings of the jury, I now find that there was want of probable cause." Appellant now complains of this action by the court below and argues that the court is obligated to make an independent finding, and not base it upon the special findings propounded to the jury. We believe that the practice followed by the judge in this case was entirely proper. In *Byers v. Ward*, 368 Pa. 416, 421, 422, 84 A. 2d 307, the Court said: "The question of want of probable cause is exclusively for the court. Where there is no conflict in the testimony, the court has no need for a finding of a jury. Where, however, there is a conflict in the testimony as to what the circumstances were out of which the prosecution arose, there are two courses open to the trial judge (a) to direct the jury to render a special verdict, and upon those findings, the court, as *matter of law*, decides whether or not there exists a want of probable cause or (b) for the court to charge the jury in what circumstances, under the evidence, defendants did or did not have probable cause for initiating the proceedings: Simpson v. Montgomery Ward & Company, 354

Pa. 87, 96, et seq. (and cases cited), 46 A. 2d 674; Restatement, Torts, sec. 673 comment d."

The position of our appellate Courts is supported by the Restatement, Torts, §673, comment d: "The respective functions of the court and jury in determining the issue of probable cause can be exercised by them in one of two ways. The better but less usual method is to require the jury to find a special verdict setting forth the circumstances under which they find that the proceedings were initiated. Upon these findings the court then determines whether the defendant had probable cause. The usual method is for the court to charge the jury under what combination or combinations of circumstances, which may be found under the evidence, the defendant did or did not have any probable cause for initiating the proceedings." There was a real conflict in the testimony in this case and it therefore became mandatory for the trial judge to submit interrogatories to the jury in order that the basic facts might be determined from the conflicting evidence. In strict logic, this had to be done before the court could determine the legal question of the want of probable cause. The trial judge followed what the Restatement, Torts, says was the better method and with this we are in entire accord. The third interrogatory might be misunderstood as committing to the jury's province the question of want of probable cause. An examination of that interrogatory will reveal that it merely dealt with the question of malice. " 'Malice, however, is a question of fact to be submitted to and found by the jury and without proof of malice the action cannot be maintained; nor does the law infer malice from the want of probable cause.' " *Simpson v. Montgomery Ward & Co.*, supra, at page 98.

We are deeply appreciative of the fact that courts have been zealous to protect officers of the law from actions for malicious prosecution. For that reason

they have clearly stated that the question of want of probable cause, which would normally be for the determination of the jury, is one of law and must be determined by the court only. It is, however, still the law that an action for malicious prosecution can be maintained to recover damages resulting to the person, property or reputation of one party, from an unsuccessful criminal prosecution initiated by another without probable cause and with malice: *Byers v. Ward,* supra, at page 421.

Appellant also argues that the verdict of $4,000.00 is excessive. The special damages which the jury could properly consider were in the sum of $625.00. The plaintiff suffered the fear and humiliation incident to being arrested, fingerprinted and photographed as a member of the "rogues' gallery"; he was incarcerated for several hours during which time he was physically prevented from communicating with his waiting and anxious family; he was physically abused, being struck in the eye and cut; he was required to undergo the emotional distress incident to the criminal trial, together with the attendant risk of conviction; his reputation has been permanently injured and his eligibility for future employment adversely affected. The plaintiff had a clean record and had never been convicted of any crime. In this day, with the decreased purchasing power of the dollar being ever present, we do not believe that the verdict was so excessive as to shock the conscience of a judge.

Judgment affirmed.

---

DISSENTING OPINION BY WOODSIDE, J.:

Believing that the evidence conclusively establishes that the police officer had probable cause for initiating

the proceedings, I would reverse and direct the entry of judgment n.o.v. for the defendant.

WATKINS and MONTGOMERY, JJ., join in this dissent.